REQUESTED BY: Dear Senators:
You have asked that we review LB 663, Eighty-fifth Legislature, Second Session, 1978. LB 663 in general is intended to create a fund and to appropriate money to a particular fund for expenditure should the referendum pending against LB 33 be unsuccessful. You ask us three questions. We will discuss them in the order in which you ask them in the letter.
Your first question is whether the state would be immediately obligated to pay the money specified in LB 33 if the referendum against LB 33 is unsuccessful. As we have pointed out in previous letters to members of the Legislature, LB 33 is not an appropriations measure and as such no money may be drawn from the treasury under authority conferred by LB 33. See, Opinion of the Attorney General, November 3, 1977, to Senator DeCamp. As such, the language of LB 33 would only be effective to the extent that the Legislature otherwise appropriated money to be expended for the purposes and in the amount specified by LB 33. Therefore, absent an express appropriation by the Legislature of some sum, no obligation would arise to raise 40 million dollars for distribution under LB 33 for the current fiscal year. We use current fiscal year advisedly. It is our assumption that you intend to refer to the fiscal year 1978-1979 and not the fiscal year 1977-1978.
In your second question you ask, if LB 33 is sustained and the state is obligated to make the payments referred to above, does the state have sufficient revenue set aside to make such payments? This question is substantially answered by our answer to the above question. The state is not obligated to make any payments under LB 33 absent an appropriation by the Legislature. Due to the fact that LB 33 was suspended by the successful referendum drive, no authority existed on behalf of the state to expend money during the fiscal year 1977-1978 pursuant to the authorizations of LB 33. It is our understanding since that was the case no consideration was given in setting the tax rate to raising the 20 million dollars that was authorized to be spent during 1977-1978 under LB 33. In addition, there is no current appropriation that we are aware of for expenditure during the fiscal year 1978-1979 in any amount. In addition, the tax rate will not be set for that fiscal year until after the adjournment of the current legislative session. At that time the Board will have sufficient information upon which it may set a rate of taxation and will raise the revenue necessary to fund all of the obligations of state government authorized by the Legislature. As such the actual determination must await the November election. If LB 33 is sustained any appropriation would be an express obligation.
The State Board of Equalization and Assessment meets at least twice a year; within fifteen days after a regular session and on or before November 15. The Board may set tax rates at either session. Section 77-2715.01(1)(h) defines an express obligation as `an obligation which has fiscal impact identifiable by a sum certain or by an established percentage or other determinative factor or factors.' Until the election it is at least arguable that no such sum is certain. Thus while the Board may consider any appropriation for LB 33 at its meeting after the session, it is also arguable that it may wait until its November meeting after the election. At that time the need or lack of need to raise money will be more readily capable of determination.
To a certain extent the appropriation you propose is speculative. It seeks to appropriate money to be expended for a purpose that may or may not exist dependent upon a contingent future event, the success or failure of LB 33 at the polls in November
In your final question you ask, if LB 33 is sustained and the state does not have sufficient funds to make, in effect, `back payments' will LB 663 be self-implementing to provide funds to make the payments referred to above or will additional appropriation measures be required? LB 663 is not an appropriations measure. It establishes a fund and provides the authority to distribute money out of that fund for particular purposes; as such it is substantive in character and is not related solely to the appropriation function specified in Article III, section 22, and Article III, Section 14 of the Constitution of the State of Nebraska. As such it appears to be in the same category as LB 33 of the last session was. Therefore, it would be necessary to enact as a part of an appropriations bill an appropriation of money from the General Fund or from whatever sources from which the money is to be derived to fund the provisions of LB 663. We note that LB 663 in section 1 provides:
 "There is hereby created in the state treasury a special fund to be known as the State Assistance to Education Fund. Such fund shall consist of one-seventh of all revenue derived from the sales tax on sales for the period July 1, 1977 to December 31, 1977, and such other amounts as may appropriated thereto."
It is our information that that sum would amount to between 14.6 million and 16.9 million dollars. However, the sums received during that period of time went into the General Fund, were commingled with all other funds of the state and were expended for programs authorized by the last legislative session. No such sum of money will exist in the General Fund that may be identified and set aside at the time LB 663 would become effective. Therefore, there would be no money from which this appropriation contemplated by section 1 could be made and it would therefore be ineffective to appropriate the sums authorized.
There is an additional difficulty presented by LB 663 in that it would appear to appropriate in section 1 and section 2 money in excess of that authorized to the distributed under the terms of LB 33 and therefore some of the money appropriated if this bill were enacted would not be expended since there would be an absence of authority to expend the sums set out.